Good morning, Your Honor. Thomas Burke of Davis Wright Tremaine on behalf of appellate CNN, and I would like to reserve five minutes for rebuttal. CNN was sued on the eve of the FCC's announcement of comprehensive regulations and a technical safe harbor for closed captioning of content, video content online. The FCC's detailed rules are the product of a coordinated, multi-year effort by the federal government, industry, and advocacy groups. The regulations are an orderly transition of online closed captioning for video programming. With a safe harbor, the industry has the incentive to provide When CNN was sued for violations of the Disabled Persons Act and the Unruh Act, two California statutes, it brought an anti-slap motion supported by detailed evidence that if it were judicially compelled to provide closed captioning of all news videos on CNN.com before the FCC's rules and the safe harbor were announced, the speed, accuracy, and cost of its reporting on the news of the day to an audience of millions could potentially be adversely affected. I understand your level playing field argument, and it's a good argument, when you're singled out and what the consequences are going to be. On the other hand, I wasn't clear from reading the briefs of what has happened thus far by the government in getting regulations which will provide a level playing field and a safe harbor. I couldn't tell from the briefs of what it was then, and of course we don't have anything now, and sometimes the government is less than speedy in its activity in this area. Judge Wallace, the regulations did come out as anticipated in February of last year. They provided a technical safe harbor, and they provided very detailed regulations and very detailed phase-in process depending on the nature of the content and in part also based on whether or not it was previously televised. Can I ask you this about the preemption argument? I find that the Supreme Court's preemption jurisprudence is sometimes less than clear, but it seems like we still have a presumption against preemption, that we presume as a starting point that a federal act won't preempt the state law. And here when I look at Section 613 and its scope, it seems fairly narrow, and there's also the savings clause for what it's worth in Section 414. So when I put those together, it seems like there's a strong argument that 613 doesn't preempt everything. So what's the best argument based on the Supreme Court's current jurisprudence that in fact Congress intended to occupy the field here with that statute? Your Honor, I think that the difference here is you're dealing with an occupation of the field for more than two decades by the FCC, and you're dealing with, and unlike the cases that the plaintiffs rely on, the Fidelity Federal and the Bethlehem Steel cases which we have cited too, they involve here a very detailed federal regime that has been the product of significant coordination both between the agency and groups, both content providers and advocates. In this case, plaintiffs were represented through the National Association of the Deaf. What's the field? So like in Arizona v. United States, the Supreme Court defined the field very narrowly. It's the alien registration field. Is this the closed captioning field? Or what field are you saying is preempted? I believe it is closed captioning with respect to the fact that there has been study and implementation. Closed captioning on television, for example, is ubiquitous these days because of that kind of a process where Congress said the FCC shall have. Right, but when you have television, you're implicating other FCC preemption issues, correct? You are, but you are also, through the CVAA, the FCC does have jurisdiction over, in this case, video providers and video distributors. And so I guess I wouldn't differentiate it that way, Your Honor. What I would suggest is that there has been a concerted effort on the part of Congress in order to have a process that's streamlined, in order to have a process that considers all the technical issues. If you compare it to the State statutes that are before the Court with the Unruh Act or the Disabled Persons Act, there are no guidelines under that, underneath those. There are no situations where there is no guidance, there's been no study, there's no implementation. So what is your understanding of the scope and the temporal dividing lines of Gladd's case as it applies to CNN? I believe that the scope, well, and I would like to address Judge Wallace's question further, his earlier question. As of the time that the lawsuit was brought against CNN, there were no Federal regulations, and it was only as against CNN. When the regulations came out, they have in effect created a safe harbor and they have created a guideline for when particular kinds of content, content that was I believe, and of course, plaintiffs are in a better position than I, plaintiffs' belief is that all video that appears on CNN.com should be subject to closed captioning, regardless of the FCC's regime. So some of the video that appears on CNN.com wouldn't be captured by the regulations? It wasn't previously televised in a full-length show? At the moment, under the current FCC procedures, under the current guidelines that have been issued, there could be some content on CNN.com that is not subject to the rules. But that is not to say, to go back to your earlier question as to the scope, we believe it was a deliberate scope, that the scope of the FCC's closed captioning regulations was a deliberate Federal policy choice after this consideration. Would the FCC have the jurisdiction to cover all videos shown on the Internet? I know there's been some dispute where the FCC thinks it has more authority over the Internet than some courts have thought. Would they have been able to? In other words, is it a deliberate choice or did they reach the limit of their jurisdiction? I do not know that it's before – I do not know that it's been decided whether or not the FCC has further ability – it certainly has further ability to regulate, just as in – just as in the regulation of closed captioning for television. It was a – it was a – it was a process. This is far more complicated in the sense that there were identified content providers for the closed caption for television. And in – as we detailed in some length in our – in our evidence, for captioning online, because of the variety of ways in which entities can create content, it was not as simple as closed captioning, say, for television to provide that. That is the significance, perhaps indirectly, of the safe harbor that was provided, the technical safe harbor, because there – there is then the ability to have that encourage greater captioning, which might not technically be subject to the current FCC regulations. But if you've got that technical standard, it can be done now, which it couldn't as of the time the lawsuit was filed and the motion was brought. Could the FCC require, for example, all YouTube videos to be closed captioned? Do they have the jurisdiction, the authority to do that, to your knowledge? Could – could they require content providers to do that? So anybody who would post content. Right. At the moment, to the extent that those are user-generated content, I do not believe that they currently fall within the FCC's rules. But that's – I don't know – I don't know if it would be within their ability to regulate that. They may be determined that somewhere within their authority they have that. But the full jurisdiction on the Internet is something that's still up in the air. Well, quite honestly, they wouldn't need to necessarily, again, with the availability of the technical standard, because that takes care of the situation. You know, for example, and I – and I – in reading through the papers even before the argument, I was concerned that Magistrate Judge Buehler didn't appreciate that this wasn't a challenge by – by CNN to the FCC rules themselves. It was a question of having to deal with a commitment. You, CNN, shall go out and provide the following – use the following technology. And CNN had no way of knowing that that technology would actually be the technology that either the FCC announced, used as the safe harbor or the like. So that was the risk. That was what was unique with respect to the exposure to CNN. But it also – I don't think the order is particularly bound up in that aspect of the technology or the FCC so much as something I do want to get to, which is the antislap definition of whether the claim as – as brought is one that is in, quote, of CNN's right of speech, free speech. Your Honor, we've obviously briefed extensively the broad construction that the statute is to receive. Right. And I – and I think that nobody disagrees with that. It's pretty hard, given the cases we do have from California, to try to fit this case into any of those. Now, maybe you've found one that you think is more illustrative. But it seems to me petitioning for attorney assignments and various other things, which the California court of appeals has had occasion to look at, that they're not particularly instructive. So I'm wondering what you think we ought to look to in coming to our construction of the in furtherance of speech. Now, to the extent that the court – and I'm not sure that the court should follow the idea of breaking out in furtherance of from the rest of the language. And I think that when the court, the district court, admits that she's applying a super narrow, narrow, narrow interpretation of that segment of the first prong of the statute, that you're necessarily, at least as to that, in furtherance of narrowly interpreting, offering a narrow construction. I would answer your question, I guess, in two ways. One is that if you look at what the plaintiffs allege in paragraph 14 of their complaint, in paragraph 14, they say their claims are based on how CNN, quote, intentionally presented the video content on CNN.com. Their claims are based on CNN's presentation. And then if you ask how is that in furtherance, we have provided three different cases that, given this context, given the fact that this was before the FCC rules were to be announced, before the technical safe harbor was known, Cronemeyer, ARP Pharmacy, and Rivera v. First Data Bank all involve situations where the defendant's client refused to do so in the sense that it would affect their First Amendment protected speech. And I don't think that this is any different here in the context that it is not as straightforward as you think. Kagan. Could you tie that up? Because it certainly doesn't go to the content, whether it's a translation or the captioning, it doesn't go to the content. So the question is your refusal not to do something, you need to tie that up to the speech element. They were concerned legitimately, based on the evidence that was submitted that the Court needed to consider, that if they were forced to adopt a closed captioning technology before there was a technical safe harbor, that it would have concerns and legitimate concerns, which they documented, about the speed, accuracy, and the cost of providing that. All of those are concerns that they did take into consideration as to whether or not they would simply adopt what the plaintiffs wanted, which was that they would provide closed captioning on all of their videos. Each one of those steps, speed obviously is very significant for the context of delivery of news to millions. That was detailed, and even plaintiffs will admit that speed was involved and that it was a concern because there didn't have a safe harbor at that point. Accuracy, there is evidence in the record. Plaintiffs will say, and I'm generalizing, they will say it was okay to have perhaps errors as long as you had, you know, as long as you had the translations. But for CNN, that's not acceptable. It's not acceptable to be having news that's provided to their audience and not have it be accurate. Accuracy tends to be a very important priority of a news organization. It certainly is paramount at CNN. As to cost, again, I spoke to it earlier. CNN would have been obligated to go down the road. It's a very expensive process. It's not a process that they weren't prepared to do, but they were compelled, essentially targeted, to do that before everyone else, to basically do it before a technical standard was available. What do you make of the D.C. Circuit cases, albeit a little bit truncated on this point, but which basically don't equate this kind of captioning to speed? But those are independent. Those are essentially industry-wide challenges. I mean, there's no question. I understand that, but if you're trying to figure out whether you really are even implicating speech under the California statute, those are the closest cases that we have, albeit in a wholly different context. Well, it's certainly the case that if plaintiffs were asking that we insert particular language in order to speak, it is certainly touching on CNN's speech. There's no way you can divorce that, and based on the fact that there was no standard as of the time that it was facing this, CNN had legitimate concerns about the speed, the accuracy, and the cost, and it was a concern about being obligated to have something that would affect potentially random errors in their speech. Are you leading towards the First Amendment right not to speak? I don't think we need to go that far in this case, but what I am concerned about is, and certainly CNN had every right not to speak in ways that would, compared to its news competitors, make its speech be slower, be more expensive, or potentially produce random errors. Well, that's just because they sued you and not somebody else. Is that what you're saying? When they sued as well. Okay. There was no technical safe harbor available. If they had gone with the options that the plaintiffs would have, those options did not allow for a safe harbor that CNN could take advantage of. You've told us about these new regulations. Obviously, we haven't read them. They're not in the case. They're not in the record. Are you suggesting mootness in some way, that because the government has now acted and has the regulations, that this case is moot? No, I'm suggesting that it's preempted. I'm suggesting either as a matter of federal supremacy or as a matter of either of the California state statutes, the state statute shouldn't, can't in this instance be compatible with the federal regime that's been announced. How do we know that? There's nothing in the record that says, yes, I understand safe harbors and I understand what everybody's going to do. We have no record of that. Unless I'm mistaken, and I'll certainly in the fleeting moments that are left, I will, when I come back with a reply, give you the citation to the regulations. I believe they are, in fact, in the record. They are in there. My question really is, if we didn't agree with you on preemption, do you have a position on whether the scope of the SLAP statute as applied to this circumstance should be certified to the California Supreme Court? I guess the question would be, what is the question to the Supreme Court? Well, it's the question you framed. You say you're not, that it doesn't, that you're permitted to have the case dismissed under that, correct? Correct. Okay. And you're permitted because the claim as framed falls under the language, at least maybe, of the first one. The second one would get into more evidentiary and other issues. Correct. That presumably would be the issue. It's the same issue. We would, either we're going to decide it or the California Supreme Court's going to decide it would be the same issue. Well, I think that in the interest for both CNN and for the plaintiffs, that the Court can decide it. It can decide that the SLAP statute applies because not only was plaintiff's conduct based on the defendant's activities in furtherance of free speech, in other words, providing the news, providing it on a timely, accurate and cost-effective way that wasn't, you know, prejudiced to them as a vis-a-vis their competitors. And I think that the Court can readily apply the SLAP statute in prong one and move to prong two. Let me extend your time just a minute, because I'd like to get your response and I'd like to have your adversary do it with permission of my colleagues. I take it that you do not agree that the Umbra Act applies, and I think you're saying also that the Disabled Persons Act does not apply, that is, that these are not places, quote, places, close quote. Correct. The difficulty I have with that, I mean, the argument on its face, I think, is a strong one. If you agree that the concerns of the ADA and the DPA are the same, but the California Supreme Court has been very clear that they don't feel restricted by the Federal Government, that they can go further than the Federal Government. And the Del Taco case, I'm sure you're familiar with, where the Supreme Court has said, California Supreme Court has said specifically that. So I get myself to the point where even if you have presumption, you have either on because, as you see it, the Umbra Act doesn't apply and the Disabled Persons Act doesn't apply, as you see it, and you have presumption, that assumes that the California doesn't have something else that's beyond that. And because the California Supreme Court in Del Taco indicated that it is broader than the Federal's, doesn't that bring to light, once more, Judge McKeown's question, aren't we going to have to let them make that, draw that line, or are we in a position to draw it for them? I think you are in a position on these facts, in a position to draw that. As to the Umbra Act, there has to be evidence of intentional discrimination. Yes. The only way that they can remotely go to that is to go to an ADA, Americans with Disability Act claim, which they don't have. They've not alleged that. And they've so then you're back to the Disabled Persons Act, and the California statute, the statute at issue, has never been applied to any instance where there are, it requires a physical barrier. And so. So Turner had the dicta that they, that's cited, citing two district court cases saying, well, maybe the Internet may or may not be a place. So leaving, at least leaving the issue open, what do we do about that? So the California appellate court says it's an open question. We don't have any other case or California Supreme Court ruling on that. How do we address that? Well, I think you can address it by looking directly at the language of the statute. And the statute surely has had an opportunity to be amended multiple times since any of those cases. It certainly isn't clear. We've got a conflict right in the district where you're speaking from. We're not, we're not, we don't have to accept what they say. But it doesn't seem to be too clear to some of the district court judges. I appreciate that, Your Honor. I guess my only point is that insertion of words, you know, either that it applies to the Internet or applies to a website, would be an easy fix and something that was certainly flagged for the legislature to be aware of for at least the last decade. And your argument then would be the plain language of places doesn't include the Internet. Correct. I have gone well past my time. There are a lot of issues. So that's fine. And we will even things up and we'll give you some time for rebuttal as well. Very good. Thank you. Good morning, Your Honors. Larry Paradis on behalf of Greater Los Angeles Agency on Deafness for the Plaintiffs and Respondents. Your Honor, the very first question here is, is this a SLAPP suit? So SLAPP, a Strategic Lawsuit Against Public Participation. The California courts have identified that as a case that's brought in the guise of an ordinary lawsuit but really isn't, that it's one that is designed to prevent or punish citizens for the exercise of their constitutional rights. Now, does this case bear any of the hallmarks of a SLAPP suit? Plaintiffs here have no dispute with the substantive content of what's on CNN.com, no dispute with how they gather the information that goes into those news broadcasts. All that plaintiffs are seeking is having access to that content. So there's no way this case is directed at punishing or deterring free speech. I have a problem with sort of a slippery slope argument, which is if this sort of lawsuit is not covered, can't any lawsuit saying you cannot have a newspaper, you cannot post on YouTube unless you have closed captioning and provide translations in five or six languages so that people from different countries would be able to read it? And at what point then does the requirement of access become an inability to speak because it's too expensive? Well, disability is a protected condition. Other languages are not protected conditions. So just as in television captioning, there's only English captioning provided pursuant to FCC requirements. Here all that plaintiffs are seeking is to have the same level of access for the videos on the Internet. The Internet is now a major means of communication in our economic and social life. What if, just on your exact point, what if you were a print newspaper and under the disability laws you're sued because you have neither a braille version nor an audio version or other aspects that would really permit more appropriate broad access? Would that be the same thing? Well, there there's a fundamental alteration that the newspaper companies would have as a defense. What? Because the — In this day of, you know, the dictation translation software, which is almost automatic, may not be accurate, which is a point CNN argued, why wouldn't that be the same thing as captioning? It's a software issue. It's that the newspapers have — well, first of all, the deaf do not need braille to understand the newspaper. But it — I was talking about if it was cited. Right. You had a citing issue. Right. You know, that's a case that could be brought down in the future, and there could be all kinds of defenses asserted by a newspaper for that. But that goes to the merits of whether you have a very good claim. We're trying to figure out within the scope of what implicates speech rights for purposes of the SLAPP statute. The other point is the newspaper is not itself a place of public accommodation. It's a product that's delivered. And the statutes that we're suing under, the DPA in particular, talk about access to places that the public is invited. It doesn't say physical places. Well, but that goes again to the elements of how you might bring your claim. There may be another basis on which, for example, somebody who was not cited could bring a claim. But it doesn't answer the more difficult question here, is whether or not this has, whether or not this implicates speech by putting up barriers to, in this case, CNN or some other companies' desire to post when, if, and how they want. The point is that there can be many defenses to a claim asking for access to speech, but that doesn't mean that the case is trying to limit the free speech activities at issue here. You know, this is an anti-SLAPP motion they've brought. We were shocked to be told that, by CNN, that this is an effort to limit their speech. I mean, I think you'd be shocked that you got an anti-SLAPP motion. But then when you start looking at it and you look at some of the California Court of Appeal rulings on how broad it might be, then it makes you a little less surprised. So, I mean, my first reaction might be the same as yours until I started reading all these cases. But there are many cases in California and in Federal courts that say if the case is not directed at conduct in furtherance of free speech, that it is not an anti-SLAPP statute. The Duncan case, for example, Duncan v. Cohen, was a copyright case. And the defendant said, you filed an anti-SLAPP, said you're trying to limit our free speech. And the Court said, no, because the plaintiff's case didn't try to limit the content of what the defendants were trying to present. It was just a straight old copyright case. So the district court read the SLAPP, the anti-SLAPP statute, as relating solely to content and the creation of content. But I didn't see any language in the statute or in the cases that necessarily stated that as opposed to you have these examples. When I just look at the plain language of the statute, I didn't – I wasn't sure why what CNN was doing was not speech and free speech, and that your action was at least based on what they were doing as part of their speech activities. Well, because there's many cases that say just because speech may be in the background or that the case may have a relationship to some speech or petitioning activity doesn't mean that the case arises from protected activity. I know the magistrate judge said that. What's your best case on that, do you think? The best case is DFEH v. 1105 Alto Loma. There, there was protected petitioning activity. It was a landlord seeking to remove a unit from the rental market. The plaintiff – well, the tenant sought an accommodation for a disability, and it was denied. The DFEH brought an action for that denial of the accommodation, and the defendant said this is protected petitioning activity. The court said no. SLAPP was not designed to create a safe harbor for discrimination. The activity at issue there was the denial of an accommodation, not a dispute about the petitioning activity itself. And the same here. The dispute here is about a denial of an accommodation, the accommodation that deaf people need to understand the communication. That seems to be a little different. The accommodation was already there in your case, you said. You're asking foreign accommodation, that is, you're asking CNN to do something that doesn't exist at the time and incur the cost in doing that. Doesn't that make a difference between that case and this one? Well, it's not really a difference because there the conduct was either legal or illegal, the denial of the accommodation. Here we have a prospective claim for injunctive relief saying you need under State law to provide physical access for deaf people to your videos online. And either that's an obligation or it's not. And a suit asking CNN, because it happens to be the first entity that we have brought a claim about, it's an issue of first impression on the Internet, but it's not an issue of first impression for captioning. As you noted, Judge Akuta, the D.C. Circuit has said captioning does not infringe free speech. It's a word-for-word translation. And the FCC has said captioning does not infringe free speech. But getting back to the first prong of the anti-SLAPP statute as opposed to the First Amendment issue, what I'm struggling with is that despite everything, speech is not in the background. The only thing that matters is CNN's speech. I mean, that's the whole point, that you want the speech to be more accessible or provided in a different way. So it's hard for me to make the connection with this Alta Loma case where what was at issue was do we get to live here or not, and the landlady wanted to kick them out. Sure. Well, in Duncan v. Cohen, again, a copyright case, the speech was central. Defendants were seeking to use the content of the plaintiff's book in a way that the plaintiff did not want them to use it. And the court said, okay, speech is involved, but the essence of your case is not an effort to limit what the defendants are saying, not to interfere with their message in any way. It's just to enforce the copyright laws. So in the same way here, we're not trying to limit anything that CNN presents on the Internet. None of our claims would limit or delay or interfere with the videos that non-disabled people see on CNN.com. But it does get, although this is a private context, it has in the back of my mind an aspect of a kind of a time, place, and manner restriction such that it's like a, you need to pay the price if you decide that you're going to speak. In this case, put your info on the Internet. You need to pay this price to get the ticket or the equivalent of a permit. And so in that way, while it doesn't affect the content, it affects potentially the decision on to speak or not to speak. And so that's where I would appreciate any comment you have on how you would analyze the slap statute if we look at it through that lens. Yeah. It's really, is an accommodation request for access to the news that able-bodied people can get, is that an effort to alter the communication that's being presented? And if it's not, if it's just asking for an accommodation, that accommodation may or may not be reasonable and may, the court ultimately may decide it's either required or not required. But is it a slap suit? Is it trying to use the judicial system to penalize or interfere with free speech? That's really the question here today, is should this be thrown out at the very beginning under this extraordinary statute called anti-slap, when all we're asking for is to be part of the conversation? Now, there's not. And all that is legitimate. I guess maybe we could also ask where I think Judge Wallace started the argument is we now have the Federal regulations in force, correct? We do. Now, a brief history of the facts here I think can clear it up. 2010, Congress passed the CVAA. That's the statute that authorized the regs. Congress stated in passing the statute that it would not apply to video clips, and it would only apply to full-length video programming previously broadcast on TV with captions. Almost all the content on CNN is video clips. That's how they describe it in their papers. So Congress, in fact, did not reach this area of the Internet video world. The regulations repeated at 47 CFR section 79.4 that it excludes video clips. So either this case and the California police powers under the unruined EPA will extend to the content on CNN.com, or there will not be any access to those video clips. That's the reality we're facing. Right. So they're saying, well, Congress intentionally limited it. And so in that case, there is a gap that they don't want, that Congress has intended not to be filled. Right. And there's a lot of doctrine about when Congress intends to preempt. And the Spretsma case says that preemption is not presumed unless there's been clear manifest statement by Congress that the decision not to regulate is intended to prevent others from regulating. Right. I mean, that's the one where basically the decision not to act can't be translated into something that would equal a preemption. Correct. That's correct, Your Honor. And there's no evidence here that Congress intended to limit others from regulating. The NAD v. Netflix case, another circuit recently looked at this question and held that the FCC regulations on Internet captioning do not fill the field, and held that in that case, the ADA could complement the FCC regulations. That's in the papers. That's NAD v. Netflix. That's a Federal Circuit, Federal district court opinion. Because there's simply no evidence in the regulations or in the legislative history that Congress intended others not to regulate. Do you have a position on the statute and whether or not it's something that the California Supreme Court should take a look at in the first instance? It very well would be appropriate to ask the California Supreme Court to weigh in on some of these California State statute issues. Now, on the DPA, we think the claim is quite strong, certainly more than the minimal merit that's required for prong two. The DPA says that disabled people are entitled to full and equal access to, and it lists a bunch of places, and then says, and other places to which the public is invited. Now, this statute was enacted in 1967, long before the Internet, and the author of the statute said the intent of the statute was to integrate people with disabilities into the social and economic life of the state. So, here we have the Internet now, two decades later, or four decades later, that's a major part of the economic and social life of the state, and deaf people are not being The problem I have with your argument, I mean, it's a good argument, but the problem I have with it is that we have to look at what the intent was. And the intent was what they had at the time they had the statute. Now, you're saying, well, they must have intended this. But I don't think that's – I don't think you could show that. I think you can show a good reason why the statute should be amended to incorporate this new thing that didn't exist at that time. But the problem I was having with it was that we have to read the plain words as they thought of them at that time, which clearly they weren't thinking of this. So when they say places, it's hard for me to adapt it here. What's your argument against that? Well, that the statute is a living, breathing statute. Oh, you believe in judicial activism. I can see this right now. You mean we're going to look at this statute, decide what they would have meant had they been there? No, you should start with the plain meaning of the words. Places. Yes. Plain meaning of the EDPA. Places to which the public is invited. Now, CNN refers to its website as a place to which the public is invited. But that's fine for CNN, but they're not the legislature. Don't we have to go back to the intent of the legislature, not what the intent of CNN was? Well, if you put your mind, if you put yourself in the mind of the enactors of legislation, were they intending to say we're only going to cover the kind of places that currently exist back in 1967? Yes. Or were we trying to ensure integration of people with disabilities into the social and economic life? Some principle that judges can go out and apply to any place, whether we had it in mind or not. If it's a reasonable application. Aren't you arguing there's a good reason for amending the statute? Well, it hasn't been needed yet. The cases that have addressed the issue, NFB v. Target was one of the first cases on this issue. I happened to be the lawyer there. And the issue, Judge Patel held that the DPA, as interpreted broadly, which is what the cases say it needs to be done, well-encompassed websites, pure websites. That's a big incorporation. I understand that. And then the Turner v. AAMC, as Judge Ikuda noted, in dictum, said, well, of course, a website is also a place to which the public is invited, and the DPA could well apply to that. So certainly there's been no definitive decision by the Cal Supreme Court on this issue. Or our court. Or our court. Or your court. I agree. And so this could be an issue that could be certified. But that would, I repeat, you know, this is under an anti-SLAPP statute at the moment. And really the question under prong two is, does our case have minimal merit? That's even if you get to prong two. And so given that there's ample precedent for applying the DPA to websites, and given that our case doesn't seek to alter the content of what CNN posts, I do want to make clear that. You haven't quite answered the question. It won't alter the content. Let's take it as a given, assuming good technology, that if you have a video with a certain content that you can make captions that don't alter the content. But what about the decision about whether I post it at all? Because then I know if I post it, I have to incur this expense or make this translation, if you will.  Well, we presented contrary evidence to the court that showed that there's no necessity that the captions be inaccurate. There's no necessity that the captions delay the posting of the videos because the caption is a separate file that can be added later. And that any cost of providing the captions could be offset by increased revenue. But wouldn't that, in this strange world we're in, in the SLAPP world, doesn't that go really more to the second prong of SLAPP rather than the first prong of SLAPP? Normally it would, except CNN presented all these issues in the prong one. CNN, below and in this appeal petition, went into all these issues in prong one. I understand. To try and convert a dispute over captioning, which the D.C. Circuit said doesn't infringe First Amendment free speech, into a First Speech free amendment concern. And what we tried to present is evidence that shows that no media company with the resources of a company like CNN really would be burdened by having to provide captions while the deaf community is being completely excluded from it. But let me just ask you. What if it cost a million dollars every time you did a captioning? I know it doesn't. But what if it did? Would that implicate speech? Well, then yes. I think CNN would have an argument on the merits as we get into the case of whether it has a First Amendment defense to providing captioning. But that goes back then to if it were to have some kind of First Amendment defense, of course, recognizing that we're kind of in the private arena, but if it had a First Amendment defense, that takes you back into the fact that this ticket to play implicates speech, doesn't it? It has to implicate it in a significant way so that it actually limits or burdens the speech that CNN can provide. And Judge Beeler found that the evidence CNN presented was conclusory and that there's no reason to think that captioning would actually limit at all what CNN presents on its website. But so if I hear you right, let's just say the evidence was in front of the Court that we've got television CNN and then we've got Internet CNN, and it would cost a million dollars every time they wanted to put one of these nonprogrammatic, one of these clips or other excerpts on. You're saying that that could implicate speech. If it was so burdensome to cost. But, however, CNN, it doesn't suggest that complying with FCC regulations that do require some captioning online would be a First Amendment concern. So how can they say, we'll comply with FCC, we won't assert First Amendment there, but for the things FCC is not regulating, that's now a First Amendment concern because of cost? If I could just make sure I understand. Are you saying that the first prong of the anti-SLAPP statute applies or doesn't apply depending on the cost or burden of the lawsuit, what the lawsuit is requesting? Yes. That if it was so clearly burdensome as to limit the news that could be presented, yes. But the response wouldn't be that CNN wouldn't have to, would not be able to post videos. It would be that captioning might not be required under the First Amendment defense in the case. It doesn't mean that the case is seeking to limit their First Amendment. Nobody is trying to restrain at all what they say. We're asking just for an accommodation so that we can understand what they're saying. And if the Court decides at the end of the day that the accommodation we're asking is too expensive, then it can deny the relief we're seeking down the road in the case. But it doesn't mean we're trying to interfere with their First Amendment. That's why it's so strange to even be in the midst of an anti-SLAPP motion. So the videos we're talking about at this stage are the ones that are not regulated by the FCC rules. Correct. And that is almost all of what you see when you go onto CNN.com right now. Sure, when you go onto the web. And this whole notion of a safe harbor that CNN is arguing about, that it was waiting for FCC to establish a safe harbor. Well, FCC has not established a safe harbor governing this content because it doesn't regulate this content. The only safe harbor that FCC is talking about is if you want to use a certain standard for the type of captioning, then this is a standard you can use and nobody will bother you because it's accepted generally. And we're not asking for a different standard here. We're just asking for the same kind of captioning you see on TV to be provided on the Internet. Thank you. Thank you. I'm going to try to even things up, so I'll give you three minutes for rebuttal. You can push up if you want. Speaking of modern technology. Here you go. I'm suddenly getting shorter. Judge Wallace, the regulations are at 47 CFR 79.4 at SEC. I had thought you had submitted them with a request for judicial notice, but if not, that is where they can be found in detail. I wanted to respond. The issue about burden, the issue about equities and the like, particularly whether or not there is an intent to chill, whether or not there is an intent to stifle CNN speech, Navalier, the decision of the California Supreme Court, addressed those issues and said you don't look at that. That's the wrong analysis with the slap statute. You look at whether or not it applies, which of course we're struggling with here. But what you don't, a burden that the defendant does not have is to prove that there was an intent to chill or actually even had an effect of chilling. What I would like to also have the Court focus on is the degree to which the plaintiff's lawsuit, what they sought, does burden CNN speech. It most certainly burdens CNN speech. In the last question of counsel, there was a suggestion that it has to implicate it in a significant way. That's just the opposite of a broad construction of the statute. That's a litmus test for it. And in fact, CNN speech is burdened because an order in plaintiff's favor would impose a regime where unless CNN engages in additional acts, which before the FCC's court announced, CNN demonstrated would affect its speed, cost and accuracy. It wasn't trying to prove up its First Amendment defense with that evidence per se. It was proving that it was arising from and furtherance of its speech. An order in plaintiff's favor would impose a regime that unless CNN did those things You know, this is sort of like being in a mogia strip because, you know, I know it doesn't relate to the height of the burden, but you introduced burden testimony really to show chill or impact, and then you turn around and say, but that's really not what you're looking at. You're not looking if it's chill. So it's kind of this chicken and egg on the table. Well, I don't know if I'd say it's chicken or egg, but I would say that the egg can be distributed in both prong one and prong two. But as to prong one, there's no question that it's targeting particular speech. And there's no question that there's burdens that if we do not follow them and the court were to issue an order, it would prohibit CNN from speaking without those. You cannot say that this does not touch CNN's speech. And it's not It was not in furtherance of CNN's concerns about editorial concerns when at the time there was a regime that basically was before the FCC's rules were announced and before there was some certainty that if they did a particular kind of captioning that it would be acceptable. Let me ask you if we agreed with you on the slap issue, and if we did that, we would either decide the remaining based on the record or send it back and the district court would do that. But let's say that CNN prevailed on the slap issue, and then let's also just say that your preemption argument, while well taken, was not successful. Then there's nothing that would prevent the plaintiff from turning around or a similar plaintiff in a State without a slap statute in pursuing the same claim, right? Correct. Okay. And the concern, of course, the substantive State statutes, you're dealing only with California here, but you could have a 50-State patchwork, which is exactly why we started with the federal supremacy. And precisely, it wouldn't advance plaintiff's interests. I think it would advance a disarray of potential other ways in which to do things which isn't providing any sort of standard for people who are wanting to have access to, as plaintiffs would say, the speech of CNN and others. I believe I've well beyond my time as well, but I appreciate it. Thank you. I'd like to thank both the counsel and also for the briefing. It's very extensive and very thoughtful and very helpful. The case of the Greater Los Angeles Agency on Deafness v. CNN is submitted.
judges: Wallace, McKeown, Ikuta